UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LIVINGSTON & MATTESICH LAW
CORPORATION

        Plaintiff,

    v.

ARIZONA BEVERAGE COMPANY LLC,
a New York limited liability
company; BEVERAGE MARKETING
USA, INC., a New York business
corporation; FEROLITO AND
VULTAGGIO LTD., a New York
business corporation;
FEROLITO, VULTAGGIO & SONS, a
business entity of unknown
form; and HORNELL BREWING
COMPANY, INC., a New York
business corporation,

        Defendants.

NO. CIV. S-05-0393 WBS DAD

MEMORANDUM AND ORDER RE:
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

----oo0oo----

Plaintiff law firm seeks payment from defendants, whom plaintiff alleges are its former clients.  Jurisdiction is proper due to the diversity of citizenship of the parties.  See 28 U.S.C. § 1332.  Plaintiff filed five causes of action against defendants: (1) breach of written contract; (2) breach of express

1

oral contract; (3) breach of implied contract; (4) quantum
meruit; and (5) fraud. (Compl.). Plaintiff now seeks summary
judgment on all causes of action except its claim for fraud.
Disputed material facts abound in this case, which was filed in
February 2005 and in which discovery has barely begun. (See June
8, 2005 Scheduling Order). Therefore, plaintiff's motion will be
denied.

I. Factual and Procedural History

     This case revolves around two contracts, one written
and one oral. The written contract was a retainer agreement
dated June 1, 2000 and executed by Gene Livingston of plaintiff
law firm and by Lisa Lane of Synnestvedt & Lechner LLP,
purportedly on behalf of "Beverage Marketing." (Livingston Decl.
Ex. A (retainer agreement)). The document states that "You have
retained this firm to represent Beverage Marketing with respect
to the California Department of Health Services embargo of
Arizona herbal tea drink." (Id. Ex. A at 1). Livingston in his
declaration contends that the term "Beverage Marketing" in the
retainer agreement refers to not only the defendant known as
Beverage Marketing USA, Inc. ("BMUSA"), but also to defendant
Hornell Brewing Company, Inc. ("Hornell")[1] and defendant Arizona
Beverage Company LLC ("Arizona"). (Id. ¶ 4). Martin Cunningham,
general counsel for Hornell, disputes that reading, stating "The
only identified party to a June, 2000 written (retainer
agreement) contract with Plaintiff . . . was Beverage Marketing.
Neither Arizona Beverage, nor Hornell, were ever parties to any

---

[1]     Defendants state that Ferolito, Vultaggio & Sons is a
"dba" of Hornell. (Cunningham Decl. ¶ 11).

1  written (retainer agreement) contract with Plaintiff Livingston."
2  (Cunningham Decl. at ¶ 5).

3        The retainer agreement has a clause stating that
4  "[t]his Agreement may be modified by . . . an oral agreement to
5  the extent the parties carry it out." (Livingston Decl. Ex. A at
6  3). Plaintiff contends that the Arizona, Hornell, and BMUSA
7  entities all orally contracted with plaintiff for legal services
8  on matters beyond the California embargo. (Id. ¶¶ 8, 14).
9  Defendants do not dispute that plaintiff represented Hornell in
10 an action brought by the District Attorney of Los Angeles (the
11 "D.A. L.A. action"), but do dispute that plaintiff represented
12 either Arizona or BMUSA in that action. (Defs.' Separate
13 Statement of Undisputed Facts ¶ 4; Cunningham Decl. ¶ 7).

14       Hornell's Cunningham states that the settlement of the
15 D.A. L.A. action "cost the company $138,000." (Cunningham Decl.
16 ¶ 14). Cunningham states that plaintiff law firm told him that
17 the settlement of the D.A. L.A. action would have a res judicata
18 effect on civil suits, and that he relied on that statement of
19 the law in choosing to settle. (Id. ¶¶ 12-14). Gene Livingston
20 states that he never advised anyone associated with the
21 defendants that the settlement would provide res judicata
22 protection. (Supp. Livingston Decl. ¶ 11).

23       In fact, the D.A. L.A. action did not have a res
24 judicata effect on civil suits such that those suits were easily
25 dismissed. (Id. ¶ 13). In January or February 2003, Hornell was
26 served in the case of Dorothy Singleton, et al. v. Ferolito,
27 Vultaggio & Sons et al. (Id. ¶ 11; Livingston Decl. ¶ 13).
28 Plaintiff law firm contends that it represented all defendants in

1 the <u>Singleton</u> action.  (Livingston Decl. ¶ 15).  Defendants

2 dispute that any party other than Hornell was represented in the

3 <u>Singleton</u> action. (Cunningham Decl. ¶ 11).

4　　　　It is undisputed that Cunningham contacted Gene

5 Livingston by telephone to arrange for representation of Hornell

6 in the <u>Singleton</u> action.  (<u>Id.</u> ¶ 12).  However, the terms of that

7 oral agreement are very much in dispute.  Defendants contend that

8 Hornell retained plaintiff's services for the limited purpose of

9 filing a motion to dismiss.  (<u>Id.</u>).  Plaintiff contends that the

10 arrangement was not limited to such a motion.  (Livingston Decl.

11 ¶¶ 13-20).

12　　　　<u>Singleton</u> was not dismissed early on.  Plaintiff

13 contends that it opened a file on the <u>Singleton</u> action in

14 February 2003, and proceeded to work on the case through August

15 2003.  (Livingston Decl. ¶¶ 16, 29).  Plaintiff contends that the

16 monthly statements it sent to defendants remained unpaid during

17 that period, and that defendants now owe $159,246.23 for legal

18 services and $43,081.45 in late fees.  (<u>Id.</u> ¶¶ 20, 29, 32).

19　　　　Defendants view the <u>Singleton</u> arrangement differently.

20 Cunningham of Hornell states that, after learning that civil

21 suits like <u>Singleton</u> would not be barred by res judicata, he

22 called Livingston in March 2003 to tell him that plaintiff's

23 legal malpractice insurance carrier should be put on notice.

24 (Cunningham Decl. ¶ 17).  Cunningham states that his

25 understanding of the agreement was that any legal services

26 provided by plaintiff were a gift, voluntarily provided for the

27 purposes of rectifying plaintiff's alleged misrepresentation that

28 the L.A. D.A. action would have a res judicata effect.  (<u>Id.</u> ¶

4

1  21).[2]  Gene Livingston, on the other hand, states that Cunningham

2  never told him to put the firm's malpractice carrier on notice

3  and that, if Cunningham had, plaintiff would have withdrawn from

4  representing defendant(s) at that time.  (Supp. Livingston Decl.

5  ¶ 12).

6  II. <u>Discussion</u>

7         The court must grant summary judgment to a moving party

8  "if the pleadings, depositions, answers to interrogatories, and

9  admissions on file, together with the affidavits, if any, show

10  that there is no genuine issue as to any material fact and that

11  the moving party is entitled to judgment as a matter of law."

12  Fed. R. Civ. P. 56(c).  Where the non-moving party avers specific

13  facts that contradict specific facts averred by the moving party,

14  factual disputes must be resolved in favor of the non-moving

15  party.  <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).

16  "A party seeking summary judgment always bears the initial

17  responsibility of informing the district court of the basis for

18

19         [2]    Plaintiff argues that defendants' understanding that
   the legal services were provided as a gift was unexpressed and
20  therefore has no legal effect.  Defendants do not admit that they
   never expressed their understanding of the contract to the
21  plaintiff, and therefore the court cannot find as a matter of law
   that defendants' understanding was not the understanding of the
22  parties.  The court notes that plaintiff's case may become
   stronger (or weaker) as defendant's representatives are deposed
23  on this issue.
          Plaintiff also contends that if defendants had held the
24  view that plaintiff was providing legal services free of charge,
   defendants would have been disabused of that notion by the first
25  billing statement.  As discussed below, a billing statement is
   not conclusive evidence of mutual intent.  Defendants may have
26  thrown out the statements without reading them, knowing that
   plaintiff was providing free legal services.  Defendants may also
27  have interpreted the statements as a demonstration of the extent
   of the charity plaintiff was conferring on defendants.  Once
28  again, the process of discovery will likely bring more facts to
   light.

1   its motion," and pointing the court to the evidence that it

2   believes show that there are no genuine issues of material fact

3   remaining.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

4   If the party moving for summary judgment has the burden of

5   persuasion at trial, as plaintiff does in this case, it "must

6   establish beyond controversy every essential element" of its

7   claim.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888

8   (9th Cir. 2003)(citation omitted).  Defendant in this case "can

9   defeat summary judgment by demonstrating the evidence, taken as a

10  whole, could lead a rational trier of fact to find in its favor."

11  See id.

12          Defendants have designated specific facts showing that

13  there remain genuine issues for trial at this early stage in the

14  litigation.  Plaintiff has not shown that the written retainer

15  agreement was executed on behalf of Arizona or Hornell.  The

16  written retainer agreement only states that it is executed on

17  behalf of "Beverage Marketing," and defendant vigorously argues

18  that the retainer agreement was executed only by BMUSA.

19  (Cunningham Decl. ¶ 5).  Plaintiff's only evidence for the

20  proposition that the defendants were all represented by

21  plaintiff, other than the bald assertions of Gene Livingston, is

22  a check made out to plaintiff, drawn on an account held in the

23  name of Ferolito, Vultaggio & Sons, and dated January 10, 2003.

24  (See Livingston Decl. Ex. B (check)).  This is simply not enough

25  to establish unequivocally that all of the defendants were

26  represented by plaintiff.  See Cal. Civ. Code § 1487("An offer of

27  performance must be made by the debtor, or by some person on his

28  behalf and with his assent.")(emphasis added).

6

1         Further, the identities of the parties that entered

2   into any subsequent oral agreements and the terms of those oral

3   agreements remain in dispute.  At this early stage of discovery,

4   the dispute in this regard is essentially a swearing match.

5   Plaintiff might argue that its preparation and delivery of

6   billing statements show that the terms of the oral agreement are

7   not in dispute.  However, California law is clear in holding that

8   a unilateral act cannot establish the existence of a contract.

9   There must be evidence of mutual intent.  <u>Long v. Rumsey</u>, 12 Cal.

10  2d 334, 345 (1938)("It is essential to the existence of every

11  contract that there should be a reciprocal assent to a definite

12  proposition.")(citation omitted).  The billing statements in this

13  case would not be enough, on their own, to prove the terms of any

14  oral agreement.  <u>See</u> <u>India Paint & Lacquer Co. v. United Steel</u>

15  <u>Prod. Corp.</u>, 123 Cal. App. 2d 597, 608 (1954)("An invoice, as

16  such, is no contract.").

17        Likewise, plaintiff's claim in quantum meruit has not

18  been established beyond controversy.  Quantum meruit applies

19  where services were "performed under circumstances disclosing

20  they were not gratuitously rendered." <u>Huskinson & Brown, LLP v.</u>

21  <u>Wolf</u>, 32 Cal. 4th 453, 458.  Here, there is a dispute about

22  whether the services were or were not gratuitously rendered.  On

23  the scant evidence in the record, the court is unable to find as

24  a matter of law that quantum meruit applies.

25        For the foregoing reasons, the court cannot find, as a

26  matter of law, that no genuine issues remain as to plaintiff's

27

28

7

1    first four causes of action.[3]

2            IT IS THEREFORE ORDERED that plaintiff's motion for

3    partial summary judgment be, and the same hereby is, DENIED.

4    DATED: July 12, 2005

5

6

7                                  WILLIAM B. SHUBB
                                   UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

        [3]    Defendants did not bring a motion pursuant to Federal
28    Rule of Civil Procedure 56(f).

8